**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. **13-20505**cr-ZLOCH

Sealed

/HUNT

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C § 1035
18 U.S.C. § 2
18 U.S.C. § 982

**UNITED STATES OF AMERICA**

**vs.**

**ROGER ROUSSEAU,**
**DORIS CRABTREE,**
**ANGELA SALAFIA,**
**LILIANA MARKS,**
**RUBEN BUSQUETS,**
**ALINA FONTS, and**
**BLANCA RUIZ,**



       **Defendants.**

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment,

1.   The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were over the age of sixty-five or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      The Florida Medicaid Program ("Florida Medicaid") provided benefits to certain low-income individuals and families in Florida.  Florida Medicaid was administered by CMS and the Agency for Health Care Administration ("AHCA").

3.      Medicare and Florida Medicaid were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

4.      Part B of Medicare covered partial hospitalization programs ("PHPs") connected with the treatment of mental illness.  The treatment program of PHPs closely resembled that of a highly structured, short-term hospital inpatient program, but it was a distinct and organized intensive treatment program that offered less than 24-hour daily care and was designed, in part, to reduce medical costs by treating qualifying individuals outside the hospital setting.

5.      Under the PHP benefit, Medicare covered the following services:  (1) individual and group therapy with physicians or psychologists (or other authorized mental health professionals); (2) occupational therapy; (3) services of social workers, trained psychiatric nurses, and other staff trained to work with psychiatric patients; (4) drugs and biologicals furnished for therapeutic purposes that cannot be self-administered; (5) individualized activity therapies that are not primarily recreational or diversionary; (6) family counseling (for treatment of the patient's condition); (7) patient training and education; and (8) diagnostic services.

6.      Medicare generally required that the PHP be provided at a facility that is hospital-based or hospital-affiliated, but Medicare also allowed a PHP to be provided in a Community Mental Health Center ("CMHC"), which is a provider type under Part A of Medicare.

7.      Medicare required that, to qualify for the PHP benefit, the services must have been reasonable and necessary for the diagnosis and active treatment of the individual's

2

condition. The program also must have been reasonably expected to improve or maintain the condition and functional level of the patient and to prevent relapse or hospitalization. The program must have been prescribed by a physician and furnished under the general supervision of a physician and under an established plan of treatment that meets Medicare requirements.

8.  Typically, a patient who needed this intensive PHP treatment had a long history of mental illness that had been treated. Patients were ordinarily referred either (a) by a hospital after full inpatient hospitalization for severe mental illness or (b) by a doctor who was trying to prevent full inpatient hospitalization for a severely mentally ill patient the doctor had been treating.

9.  Medicare guidelines specifically excluded meals and transportation from coverage under the PHP benefit.

10.  Medicare did not cover programs involving primarily social, recreational, or diversionary activities. Psychosocial programs that provided only a structured environment, socialization, or vocational rehabilitation were not covered by Medicare.

11.  In order to receive payment from Medicare, a CMHC, medical clinic, or physician was required to submit a health insurance claim form to Medicare, called a Form 1450. The claims may have been submitted in hard copy or electronically. A CMHC, medical clinic, and physician may have contracted with a billing company to transmit claims to Medicare on their behalf.

12.  Medicare Part B was administered in Florida by First Coast Service Options, which, pursuant to contract with the United States Department of Health and Human Services, served as a contracted carrier to receive, adjudicate and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians, or CMHCs. Medicare Part B paid CMHCs and

3

physicians directly for the cost of PHP services furnished to eligible Medicare beneficiaries, provided that the services met Medicare requirements.

13.     Florida Medicaid covered community mental health services, including PHP treatment.

14.     An Assisted Living Facility ("ALF") meant any facility licensed by AHCA, whether operated for profit or not, which provided housing, meals, and one or more personal services for a period exceeding 24 hours to one or more adults who were not relatives of the owner or administrator.

### Defendants and Relevant Entities

15.     Health Care Solutions Network ("HCSN") was an entity that operated purported CMHCs in Florida and North Carolina.

16.     In Florida, Health Care Solutions Network, Inc. ("HCSN-FL") was a Florida corporation that operated purported CMHCs in Miami, Florida at the following addresses: 19355 South Dixie Highway, Miami, Florida 33157 ("HCSN-FL East"), 10406 S.W. 186th Terrace, Miami, Florida 33157 ("HCSN-FL West"), and 13155 S.W. 134th Street, Miami, Florida 33186.

17.     In North Carolina, Health Care Solutions Network of North Carolina, Inc. ("HCSN-NC") was a North Carolina corporation that operated a purported CMHC in Hendersonville, North Carolina at 170 Old Naples Road, Hendersonville, North Carolina 28792.

18.     Psychiatric Consulting Network, Inc. ("PCN") was a Florida corporation with the following addresses in Miami, Florida:  10406 S.W. 186th Terrace, Miami, Florida 33157, and 15160 S.W. 136th Street, Miami, Florida 33196.  PCN was purported to be an independent contractor that purported to determine the necessity and appropriateness of care rendered at HCSN.

19.     Procare Management and Financial Network, Inc. ("Procare") was a Florida corporation with the following addresses in Miami, Florida:  13200 S.W. 128th Street, Miami, Florida 33186; 9245 S.W. 158th Lane, Miami, Florida 33157, 19355 South Dixie Highway, Miami, Florida 33157, and 15160 S.W. 136th Street, Miami, Florida 33196.  Procare purported to be an independent contractor that purportedly handled the billing for HCSN.

20.     Defendant **ROGER ROUSSEAU**, a resident of Miami-Dade County, was a physician licensed in the State of Florida and the medical director for HCSN-FL East.

21.     Defendant **DORIS CRABTREE**, a resident of Miami-Dade County, was a licensed therapist for HCSN-FL East.

22.     Defendant **ANGELA SALAFIA**, a resident of Miami-Dade County, was a registered family and marriage therapist who conducted PHP group therapy sessions for HCSN-FL East.

23.     Defendant **LILIANA MARKS**, a resident of Miami-Dade County, was a licensed therapist for HCSN-FL East.

24.     Defendant **RUBEN BUSQUETS**, a resident of Miami-Dade County, was a licensed therapist for HCSN-FL East.

25.     Defendant **ALINA FONTS**, a resident of Miami-Dade County, was a registered mental health counselor intern who conducted PHP group therapy sessions for HCSN-FL.

26.     Defendant **BLANCA RUIZ**, a resident of Miami-Dade County, was a registered mental health counselor intern and clinical coordinator for HCSN-FL.

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.      Paragraphs 1 through 26 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around November 2004, through in or around March 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ROGER ROUSSEAU,
DORIS CRABTREE,
ANGELA SALAFIA,
LILIANA MARKS,
RUBEN BUSQUETS,
ALINA FONTS,
and
BLANCA RUIZ,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with Armando Gonzalez, John Thoen, Alina Feas, Paul Thomas Layman, Alexandra Haynes, Dana Gonzalez, Gema Pampin, Lisset Palmero and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### PURPOSE OF THE CONSPIRACY

3.      It was a purpose and object of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things; (a) submitting and causing the submission of false and fraudulent claims to Medicare and Medicaid through HCSN for

services that were medically unnecessary, that were not eligible for Medicare and Medicaid reimbursement, and that were never provided; (b) concealing the submission of false and fraudulent claims to Medicare and Medicaid and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators in the form of compensation and other remuneration.

### MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.  Armando Gonzalez and other co-conspirators paid and caused the payment of cash kickbacks to Miami-Dade County area ALF owners and operators, in exchange for the ALFs delivering and causing the delivery of ineligible patients housed at their facilities to HCSN-FL for purported PHP treatment.

5.  **ROGER ROUSSEAU, DORIS CRABTREE, ANGELA SALAFIA, LILIANA MARKS, RUBEN BUSQUESTS, ALINA FONTS, BLANCA RUIZ** and their co-conspirators falsified, fabricated, altered, and caused the alteration, falsification, fabrication of HCSN medical records to support claims for PHP services that were not medically necessary and were not provided at HCSN-FL.

6.  **ROGER ROUSSEAU** signed what he knew to be falsified, fabricated and altered medical records without ever reviewing the material, and, in most instances, without ever meeting with the patient.

7.  **ALINA FONTS** falsified and fraudulently fabricated medical records to support claims for PHP services that were not medically necessary and were not provided at HCSN-NC.

8.      **ALINA FONTS**, **BLANCA RUIZ**, Dana Gonzalez and Gema Pampin fabricated group therapy notes for a "ghost group" or "white group" to support claims for PHP services that were not provided at HCSN-FL.

9.      **ROGER ROUSSEAU**, **DORIS CRABTREE**, **ANGELA SALAFIA**, **LILIANA MARKS**, **RUBEN BUSQUESTS**, **ALINA FONTS**, **BLANCA RUIZ** and their co-conspirators submitted and caused to be submitted claims to Medicare and Medicaid in an approximate amount of $63 million for PHP services that were not medically necessary and were not provided at HCSN-FL and HCSN-NC.

10.     **ROGER ROUSSEAU**, **DORIS CRABTREE**, **ANGELA SALAFIA**, **LILIANA MARKS**, **RUBEN BUSQUESTS**, **ALINA FONTS**, **BLANCA RUIZ** and their co-conspirators caused the transfer and disbursement of illicit proceeds derived from the fraudulent billing scheme into and out of HCSN's, PCN's, and Procare's various corporate bank accounts to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-5
### Health Care Fraud
### (18 U.S.C. § 1347)

1.      Paragraphs 1 through 26 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around  November 2004, and continuing through in or around March 2011, in  Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### ROGER ROUSSEAU
### and
### ALINA FONTS,

in connection with the delivery of and payment for health care benefits, items, and services, did

8

knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare and Medicaid, health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare.

### Purpose of the Scheme and Artifice

3.      It was the purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare and Florida Medicaid; (b) concealing the submission of false and fraudulent claims to Medicare and Florida Medicaid and receipt and transfer of fraud proceeds; and (c) diverting fraud proceeds for the personal use and benefit of themselves and others.

### The Scheme and Artifice

4.      The allegations contained in paragraphs 4 through 10 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

5.      On or about the dates set forth below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, as set forth below, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud health care benefit programs affecting commerce, that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and

property owned by, and under the custody and control of, said health care benefit program, in that the defendants submitted and caused the submission of false and fraudulent Medicare and Medicaid claims seeking the below listed dollar amounts, and falsely represented that HCSN had provided the identified mental health services to the below listed beneficiaries:

| | | | | | | |
|---|---|---|---|---|---|---|
| 2 | **ROGER ROUSSEAU** | M.A. | 21019000828505FLA | 7/6/2010 | 7/9/2010 | G0410;Group PsychPartial Hosp., $225; <br><br> G0177: OPPS/PHP train & Educ Serv, $75 |
| 3 | **ROGER ROUSSEAU** | M.R. | 2109000825005FLA | 7/9/2010 | 7/9/2010 | G0410; Group PsychPartial Hosp., $225 |
| 4 | **ALINA FONTS** | P.D. | 20909001086705 | 3/25/2010 | 3/31/2009 | G0410;Group PsychPartial Hosp., $225 |
| 5 | **ALINA FONTS** | P.D. | 20909701205505FLA | 4/1/2009 | 4/7/2009 | G0410;Group PsychPartial Hosp., $225 |

In violation of Title 18, United States Code, Sections 1347 and 2.

### COUNT 6
**False Statements Related to Health Care Matters**
**(18 U.S.C. § 1035(a)(2))**

On or about August 4, 2009, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**DORIS CRABTREE,**

in any matter involving a health care benefit program, knowingly and willfully made any

materially false, fictitious, and fraudulent statements and representations, and made and used any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant prepared a document titled, "Health Care Solutions Network CMHC GROUP NOTE – Coping Skills," in which the defendant stated that Medicare beneficiary O.D. said that "I worry about my sister and sometimes I can't sleep but since I make use of the relaxation exercises I am doing much better," when in truth and in fact, and as the defendant then and there well knew, Medicare beneficiary O.D. did not say "I worry about my sister and sometimes I can't sleep but since I make use of the relaxation exercises I am doing much better," in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

### COUNT 7
#### False Statements Related to Health Care Matters
#### (18 U.S.C. § 1035(a)(2))

On or about August 4, 2009, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

#### DORIS CRABTREE,

in any matter involving a health care benefit program, knowingly and willfully made any materially false, fictitious, and fraudulent statements and representations, and made and used any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant prepared a document titled, "Health Care Solutions Network CMHC GROUP NOTE – Assertiveness Group," in which the defendant stated that Medicare beneficiary O.D. said that "It is not easy to be assertive.

Nevertheless, it is very effective," when in truth and in fact, and as the defendant then and there well knew, Medicare beneficiary O.D. did not say "It is not easy to be assertive.  Nevertheless, it is very effective," in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

**COUNT 8**
**False Statements Related to Health Care Matters**
**(18 U.S.C. § 1035(a)(2))**

On or about November 17, 2009, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**ANGELA SALAFIA,**

in any matter involving a health care benefit program, knowingly and willfully made any materially false, fictitious, and fraudulent statements and representations, and made and used any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant prepared a document titled, "Health Care Solutions Network CMHC GROUP NOTE – Stress Management," in which the defendant stated that Medicare beneficiary R.R. said that "I try to think good things but nothing comes to mind.  I am sad and worried.  That is all I can think of," when in truth and in fact, and as the defendant then and there well knew, Medicare beneficiary R.R. did not say "I try to think good things but nothing comes to mind.  I am sad and worried.  That is all I can think of," in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

## COUNT 9
### False Statements Related to Health Care Matters
### (18 U.S.C. § 1035(a)(2))

On or about July 17, 2009, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**ANGELA SALAFIA,**

in any matter involving a health care benefit program, knowingly and willfully made any materially false, fictitious, and fraudulent statements and representations, and made and used any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant prepared a document titled, "Health Care Solutions Network CMHC GROUP NOTE – Psychotherapy Process," in which the defendant stated that Medicare beneficiary D.G. said that "I know I need to socialize and distract myself but I can't.  I have no energy.  I feel down," when in truth and in fact, and as the defendant then and there well knew, Medicare beneficiary D.G. did not say "I know I need to socialize and distract myself but I can't.  I have no energy.  I feel down," in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

## COUNT 10
### False Statements Related to Health Care Matters
### (18 U.S.C. § 1035(a)(2))

On or about March 5, 2010, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**LILIANA MARKS,**

in any matter involving a health care benefit program, knowingly and willfully made any materially false, fictitious, and fraudulent statements and representations, and made and used any

materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant prepared a document titled, "Health Care Solutions Network CMHC GROUP NOTE – Treatment Goals," in which the defendant stated that Medicare beneficiary S.A. said that "I want to be who I used to be," when in truth and in fact, and as the defendant then and there well knew, Medicare beneficiary S.A. did not say "I want to be who I used to be," in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

## COUNT 11
### False Statements Related to Health Care Matters
### (18 U.S.C. § 1035(a)(2))

On or about March 12, 2010, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

## LILIANA MARKS,

in any matter involving a health care benefit program, knowingly and willfully made any materially false, fictitious, and fraudulent statements and representations, and made and used any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant prepared a document titled, "Health Care Solutions Network CMHC GROUP NOTE – Treatment Goals," in which the defendant stated that Medicare beneficiary S.A. said that "I want to be who I used to be," when in truth and in fact, and as the defendant then and there well knew, Medicare beneficiary S.A. did not say "I want to be who I used to be," in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

## COUNT 12
**False Statements Related to Health Care Matters**
**(18 U.S.C. § 1035(a)(2))**

On or about December 31, 2009, in Miami-Dade County, in the Southern District of

Florida and elsewhere, the defendant,

**RUBEN BUSQUETS,**

in any matter involving a health care benefit program, knowingly and willfully made any

materially false, fictitious, and fraudulent statements and representations, and made and used any

materially false writing and document knowing the same to contain any materially false,

fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for

health care benefits, items, and services, that is, the defendant prepared a document titled,

"Health Care Solutions Network CMHC GROUP NOTE – Assertiveness," in which the

defendant stated that Medicare beneficiary M.M. said that "I want to have a better sense of

humor," when in truth and in fact, and as the defendant then and there well knew, Medicare

beneficiary M.M. did not say "I want to have a better sense of humor," in violation of Title 18,

United States Code, Sections 1035(a)(2) and 2.

## COUNT 13
**False Statements Related to Health Care Matters**
**(18 U.S.C. § 1035(a)(2))**

On or about January 5, 2010, in Miami-Dade County, in the Southern District of Florida

and elsewhere, the defendant,

**RUBEN BUSQUETS,**

in any matter involving a health care benefit program, knowingly and willfully made any

materially false, fictitious, and fraudulent statements and representations, and made and used any

materially false writing and document knowing the same to contain any materially false,

fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant prepared a document titled, "Health Care Solutions Network CMHC GROUP NOTE – Psychotherapy Process," in which the defendant stated that Medicare beneficiary M.M. said that "I pray to stay calm.  I need the groups to keep me calm," when in truth and in fact, and as the defendant then and there well knew, Medicare beneficiary M.M. did not say "I pray to stay calm.  I need the groups to keep me calm," in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1.      The allegations contained in Counts 1 through 13 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **ROGER ROUSSEAU**, **DORIS CRABTREE**, **ANGELA SALAFIA**, **LILIANA MARKS**, **RUBEN BUSQUETS**, **ALINA FONTS**, and **BLANCA RUIZ** have an interest.

2.      Upon conviction of Counts 1 through 13, as alleged in this Indictment **ROGER ROUSSEAU**, **DORIS CRABTREE**, **ANGELA SALAFIA**, **LILIANA MARKS**, **RUBEN BUSQUETS**, **ALINA FONTS**, and **BLANCA RUIZ**, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 982(a)(7).

3.      If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount derived from such offense.

4.      The property subject to forfeiture includes, but is not limited to:

a.   the sum that constitutes the gross proceeds the defendants derived from the offenses

alleged, which sum may be sought as a money judgment.

5.       If any of the property described above, as a result of any act or omission of the

defendants:

a.       cannot be located upon the exercise of due diligence;

b.       has been transferred or sold to, or deposited with, a third party;

c.       has been placed beyond the jurisdiction of the court;

d.       has been substantially diminished in value; or

e.       has been commingled with other property which cannot be divided without
difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

982(b)(1).

This substitute property includes, but is not limited to:

a.   The real property located at  9949 SW 126 Terrace Miami, FL 33176

b.   The real property located at 11751 SW 137 Place Miami, FL 33186

c.   The real property located at 2346 SE 16 Terrace Homestead, FL 33035

d.   2013 Mercedes Benz VIN WDDHF5KB6DA756502

e.   2012 Mercedes Benz WDCGG5GB4CF798108

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures outlined in Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

BENJAMIN SINGER
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ALLAN J. MEDINA
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

ROGER ROUSSEAU et. al.,

**Defendants.**

CASE NO _____

# CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)

| | | | |
|---|---|---|---|
| _X_ | Miami | ____ | Key West |
| | FTL | ____ | WPB | FTP |

New Defendant(s)        Yes _____   No ____
Number of New Defendants _____
Total number of counts   _____

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:     (Yes or No)        No
    List language and/or dialect _____

4.  This case will take    _15_    days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                              (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | X_____ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | X_____ |
| V | 61 days and over | _____ | | |

6.  Has this case been previously filed in this District Court?  (Yes or No)      No
    If yes:
    Judge: _____  Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?        (Yes or No)      No
    If yes:
    Magistrate Case No. _____
    Related Miscellaneous numbers: _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the _____  District of _____

    Is this a potential death penalty case? (Yes or No)      No

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes    _X_ No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes    _X_ No

_____
ALLAN MEDINA
DOJ Trial Attorney

*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:   ROGER ROUSSEAU**

**Case No:**

Count #1:

Conspiracy To Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Ten (10) years' imprisonment

Counts #2-3:

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:** Ten (10) years' imprisonment as to each count

Count:

**\*Max. Penalty:**

Counts:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   **DORIS CRABTREE**

**Case No:**

Count #1:

Conspiracy To Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Ten (10) years' imprisonment

Counts #6-7:

False Statements Related to Health Care Matters

Title 18, United States Code, Section 1035(a)(2)

**\*Max. Penalty:** Five (5) years' imprisonment as to each count

Count:

**\*Max. Penalty:**

Counts:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

Defendant's Name:   **ANGELA SALAFIA**

Case No:

Count #1:

Conspiracy To Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Ten (10) years' imprisonment

Counts  #8-9:

False Statements Related to Health Care Matters

Title 18, United States Code, Section 1035(a)(2)

**\*Max. Penalty:** Five (5) years' imprisonment as to each count

Count:

**\*Max. Penalty:**

Counts:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**PENALTY SHEET**

**Defendant's Name:**   **LILIANA MARKS**

**Case No:**

Count #1:

Conspiracy To Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Ten (10) years' imprisonment

Counts #10-11:

False Statements Related to Health Care Matters

Title 18, United States Code, Section 1035(a)(2)

**\*Max. Penalty:** Five (5) years' imprisonment as to each count

Count:

**\*Max. Penalty:**

Counts:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** **RUBEN BUSQUETS**

**Case No:**

Count #1:

Conspiracy To Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Ten (10) years' imprisonment

Counts #12-13:

False Statements Related to Health Care Matters

Title 18, United States Code, Section 1035(a)(2)

**\*Max. Penalty:** Five (5) years' imprisonment as to each count

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### <u>PENALTY SHEET</u>

**Defendant's Name**: __**ALINA FONTS**_____

**Case No**:_____

Count #1:

Conspiracy To Commit Health Care Fraud_____

Title 18, United States Code, Section 1349_____

**\* Max. Penalty**: Ten (10) years' imprisonment_____

Counts #4-5:

Health Care Fraud_____

Title 18, United States Code, Section 1347_____

**\*Max. Penalty**: Ten (10) years' imprisonment as to each count_____

Count:

_____

_____

**\*Max. Penalty**:_____

Counts:

_____

_____

**\*Max. Penalty**:_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:   **BLANCA RUIZ**

**Case No**:

Count #1:

Conspiracy To Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Ten (10) years' imprisonment

Counts:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

Counts:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**