UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Sealed

Case No. 13-20505CR-ZLOCH
/HUNT

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C § 1035
18 U.S.C. § 2
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

ROGER ROUSSEAU,
DORIS CRABTREE,
ANGELA SALAFIA,
LILIANA MARKS,
RUBEN BUSQUETS,
ALINA FONTS, and
BLANCA RUIZ,

        Defendants.
_____/



FILED by D.C.
JUL 11 2013
STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment,

1. The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were over the age of sixty-five or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

condition. The program also must have been reasonably expected to improve or maintain the condition and functional level of the patient and to prevent relapse or hospitalization. The program must have been prescribed by a physician and furnished under the general supervision of a physician and under an established plan of treatment that meets Medicare requirements.

8. Typically, a patient who needed this intensive PHP treatment had a long history of mental illness that had been treated. Patients were ordinarily referred either (a) by a hospital after full inpatient hospitalization for severe mental illness or (b) by a doctor who was trying to prevent full inpatient hospitalization for a severely mentally ill patient the doctor had been treating.

9. Medicare guidelines specifically excluded meals and transportation from coverage under the PHP benefit.

10. Medicare did not cover programs involving primarily social, recreational, or diversionary activities. Psychosocial programs that provided only a structured environment, socialization, or vocational rehabilitation were not covered by Medicare.

11. In order to receive payment from Medicare, a CMHC, medical clinic, or physician was required to submit a health insurance claim form to Medicare, called a Form 1450. The claims may have been submitted in hard copy or electronically. A CMHC, medical clinic, and physician may have contracted with a billing company to transmit claims to Medicare on their behalf.

12. Medicare Part B was administered in Florida by First Coast Service Options, which, pursuant to contract with the United States Department of Health and Human Services, served as a contracted carrier to receive, adjudicate and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians, or CMHCs. Medicare Part B paid CMHCs and

3

19. Procare Management and Financial Network, Inc. ("Procare") was a Florida corporation with the following addresses in Miami, Florida: 13200 S.W. 128th Street, Miami, Florida 33186; 9245 S.W. 158th Lane, Miami, Florida 33157, 19355 South Dixie Highway, Miami, Florida 33157, and 15160 S.W. 136th Street, Miami, Florida 33196. Procare purported to be an independent contractor that purportedly handled the billing for HCSN.

20. Defendant **ROGER ROUSSEAU**, a resident of Miami-Dade County, was a physician licensed in the State of Florida and the medical director for HCSN-FL East.

21. Defendant **DORIS CRABTREE**, a resident of Miami-Dade County, was a licensed therapist for HCSN-FL East.

22. Defendant **ANGELA SALAFIA**, a resident of Miami-Dade County, was a registered family and marriage therapist who conducted PHP group therapy sessions for HCSN-FL East.

23. Defendant **LILIANA MARKS**, a resident of Miami-Dade County, was a licensed therapist for HCSN-FL East.

24. Defendant **RUBEN BUSQUETS**, a resident of Miami-Dade County, was a licensed therapist for HCSN-FL East.

25. Defendant **ALINA FONTS**, a resident of Miami-Dade County, was a registered mental health counselor intern who conducted PHP group therapy sessions for HCSN-FL.

26. Defendant **BLANCA RUIZ**, a resident of Miami-Dade County, was a registered mental health counselor intern and clinical coordinator for HCSN-FL.

services that were medically unnecessary, that were not eligible for Medicare and Medicaid reimbursement, and that were never provided; (b) concealing the submission of false and fraudulent claims to Medicare and Medicaid and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators in the form of compensation and other remuneration.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. Armando Gonzalez and other co-conspirators paid and caused the payment of cash kickbacks to Miami-Dade County area ALF owners and operators, in exchange for the ALFs delivering and causing the delivery of ineligible patients housed at their facilities to HCSN-FL for purported PHP treatment.

5. **ROGER ROUSSEAU, DORIS CRABTREE, ANGELA SALAFIA, LILIANA MARKS, RUBEN BUSQUESTS, ALINA FONTS, BLANCA RUIZ** and their co-conspirators falsified, fabricated, altered, and caused the alteration, falsification, fabrication of HCSN medical records to support claims for PHP services that were not medically necessary and were not provided at HCSN-FL.

6. **ROGER ROUSSEAU** signed what he knew to be falsified, fabricated and altered medical records without ever reviewing the material, and, in most instances, without ever meeting with the patient.

7. **ALINA FONTS** falsified and fraudulently fabricated medical records to support claims for PHP services that were not medically necessary and were not provided at HCSN-NC.

7

knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare and Medicaid, health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare.

### Purpose of the Scheme and Artifice

3. It was the purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare and Florida Medicaid; (b) concealing the submission of false and fraudulent claims to Medicare and Florida Medicaid and receipt and transfer of fraud proceeds; and (c) diverting fraud proceeds for the personal use and benefit of themselves and others.

### The Scheme and Artifice

4. The allegations contained in paragraphs 4 through 10 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

5. On or about the dates set forth below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, as set forth below, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud health care benefit programs affecting commerce, that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and

materially false, fictitious, and fraudulent statements and representations, and made and used any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant prepared a document titled, "Health Care Solutions Network CMHC GROUP NOTE – Coping Skills," in which the defendant stated that Medicare beneficiary O.D. said that "I worry about my sister and sometimes I can't sleep but since I make use of the relaxation exercises I am doing much better," when in truth and in fact, and as the defendant then and there well knew, Medicare beneficiary O.D. did not say "I worry about my sister and sometimes I can't sleep but since I make use of the relaxation exercises I am doing much better," in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

## COUNT 7
**False Statements Related to Health Care Matters**
**(18 U.S.C. § 1035(a)(2))**

On or about August 4, 2009, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**DORIS CRABTREE,**

in any matter involving a health care benefit program, knowingly and willfully made any materially false, fictitious, and fraudulent statements and representations, and made and used any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant prepared a document titled, "Health Care Solutions Network CMHC GROUP NOTE – Assertiveness Group," in which the defendant stated that Medicare beneficiary O.D. said that "It is not easy to be assertive.

11

### COUNT 9
### False Statements Related to Health Care Matters
### (18 U.S.C. § 1035(a)(2))

On or about July 17, 2009, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

### ANGELA SALAFIA,

in any matter involving a health care benefit program, knowingly and willfully made any materially false, fictitious, and fraudulent statements and representations, and made and used any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant prepared a document titled, "Health Care Solutions Network CMHC GROUP NOTE – Psychotherapy Process," in which the defendant stated that Medicare beneficiary D.G. said that "I know I need to socialize and distract myself but I can't. I have no energy. I feel down," when in truth and in fact, and as the defendant then and there well knew, Medicare beneficiary D.G. did not say "I know I need to socialize and distract myself but I can't. I have no energy. I feel down," in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

### COUNT 10
### False Statements Related to Health Care Matters
### (18 U.S.C. § 1035(a)(2))

On or about March 5, 2010, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

### LILIANA MARKS,

in any matter involving a health care benefit program, knowingly and willfully made any materially false, fictitious, and fraudulent statements and representations, and made and used any

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

_____
BENJAMIN SINGER
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
ALLAN J. MEDINA
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE