```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF FLORIDA
                         MIAMI DIVISION
                   CASE NO. 13-20505-CR-SCOLA

UNITED STATES OF AMERICA,              NOVEMBER 10, 2014
                                           10:23 A.M.
              Plaintiff,



     vs.


ROGER ROUSSEAU, et al.,

              Defendants.          PAGES 1 THROUGH 9
_____

                            DAY 6
              EXCERPT OF CRIMINAL JURY TRIAL
     (CROSS-EXAMINATION OF RUBEN A. BUSQUETS BY MR. HERMIDA)
          BEFORE THE HONORABLE ROBERT N. SCOLA, JR.
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:      Mr. Allan J. Medina, AUSA
                        Mr. A. Brendan Stewart, AUSA
                        Mr. Justin Goodyear, AUSA
                        U.S. DEPARTMENT OF JUSTICE
                        Criminal Division
                        Fraud Section
                        1400 New York Avenue NW
                        Washington, DC 20530


FOR THE DEFENDANT:      Mr. Samuel J. Rabin, Jr., Esq.
(Roger Rousseau)        LAW OFFICES OF SAMUEL J. RABIN, ESQ.
                        800 Brickell Avenue
                        Suite 1400
                        Miami, Florida  33131


FOR THE DEFENDANT:      Mr. Rene Palomino, Jr., Esq.
(Doris Crabtree)        LAW OFFICES OF RENE PALOMINO, JR., ESQ.
                        1221 Brickell Avenue # 900
                        Miami, Florida  33131
```

```
APPEARANCES (continued):


FOR THE DEFENDANT:     Mr. Ricardo P. Hermida, Esq.
(Angela Salafia)       LAW OFFICES OF RICARDO P. HERMIDA, ESQ.
                       55 Merrick Way
                       Suite 212
                       Coral Gables, Florida  33134



FOR THE DEFENDANT:     Mr. Frank A. Prieto, Esq.
(Liliana Marks)        LAW OFFICE OF FRANK A. PRIETO, P.A.
                       One Northeast 2nd Avenue
                       Suite 200
                       Miami, Florida  33132



FOR THE DEFENDANT:     Mr. Juan De Jesus Gonzalez, Esq.
(Alina Fonts)          LAW OFFICES OF JUAN DE JESUS GONZALEZ
                       10631 N. Kendall Drive
                       Suite 150
                       Miami, Florida  33176



FOR THE DEFENDANT:     Mr. Albert Z. Levin, Esq.
(Blanca Ruiz)          LAW OFFICES OF ALBERT Z. LEVIN, P.A.
                       Courthouse Tower
                       40 NW 3rd Street
                       Suite 200
                       Miami, Florida  33128



COURT REPORTER:        Carly L. Horenkamp, RMR, CRR
                       U.S. DISTRICT COURT
                       400 N. Miami Avenue, Room 12-3
                       Miami, Florida  33128
                       (305) 523-5138
```

```
 1                         I N D E X

 2    Certificate -------------------------------------------- 9

 3

 4

 5                         W I T N E S S
      ON BEHALF OF THE GOVERNMENT:                        PAGE
 6    RUBEN A. BUSQUETS
      CROSS-EXAMINATION BY MR. HERMIDA                       4
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1             (Before Jury, 10:23 a.m.)
2                  THE COURT:  All right.  Mr. Hermida.
3                  MR. HERMIDA:  Thank you, Your Honor.
4             Good morning.
5                          CROSS-EXAMINATION
6    BY MR. HERMIDA:
7    Q.   Good morning, Dr. Busquets.  It's Dr. Busquets, right?
8    A.   No, sir.  It's Mr. Ruben Busquets.
9    Q.   Mr. Busquets, you have formal medical training.
10   A.   Yes, sir.
11   Q.   In your native Cuba, you practiced as a psychiatrist.
12   A.   Yes, sir.
13   Q.   How many years did you practice as a psychiatrist?
14   A.   Well, from when I started as a resident, that's three
15   years, until I was done, two years after that.
16   Q.   So you've received formal medical training and practice.
17   A.   Yes, sir.
18   Q.   That's different than a licensed mental health therapist,
19   correct?
20   A.   Yes, sir.
21   Q.   You're a medical doctor.
22   A.   Yes.
23   Q.   You could prescribe medicines.
24   A.   Yes, sir.  Not in this country because I don't have a
25   license.

1  Q.  In the past, you could arrive at diagnoses.
2  A.  Yes, sir.
3  Q.  And you had at least three years of practical on-hand
4  experience, correct?
5  A.  Yes, sir.
6  Q.  My client, Mrs. Salafia, has no such medical experience,
7  correct?  If you know, sir.
8  A.  I don't know, sir.  I would not be able to say.
9  Q.  You were -- you returned to Health Care Solutions Network
10 in 2009?
11 A.  Yes, towards the end of 2009, sir.
12 Q.  And my client left in February 2010, so you were with her a
13 very brief period of time, about a year?
14 A.  Yes, sir.
15 Q.  Mr. Busquets, there was testimony earlier about an audit.
16 Were you present when they did the JCAHO accreditation in
17 October 2010?
18 A.  Yes, sir.
19 Q.  And that's when the daily meetings with Alina Feas and
20 Lisset and Dana and Gema, that's when they started, correct?
21 A.  A bit before then, it seems to me, sir.
22 Q.  Were you also working at Health Care Solutions Network East
23 when they had relocated to a warehouse and they were improving
24 the offices?
25 A.  Yes, sir.

1   Q.  And do you recall there was a Safeguard Services audit, I
2   think August of 2010?
3   A.  I remember the audit, sir, but I don't remember the date
4   very well.
5   Q.  Would you agree with me that the meetings started somewhere
6   between August 2010 and October 2010?
7   A.  It seems to me that they started more or less in June, more
8   or less, around there.
9   Q.  About June 2010?
10  A.  Yes.
11  Q.  And are those the famous flash meetings or what were they
12  referred as, daily meetings?
13  A.  Yes, sir.  Can I explain?
14  Q.  Yes, please.
15  A.  So before, they were formally scheduled to happen one hour
16  early in the morning.  These were daily meetings that would
17  happen in the morning.  But also, afterwards, the director
18  would hold them towards the end of the group meetings in the
19  afternoon.  The group meetings would last for about four hours.
20  Q.  I understand.  One of the things that came up in cross -- I
21  don't know whether it was in cross or on direct -- the fact
22  that you had no real office or computer space at Health Care
23  Solutions Network East, correct?
24  A.  Yes, sir.
25  Q.  So you basically did your group therapy notes at home.

1  A.  Yes, sir.
2  Q.  And you would bring them in the following day or when they
3  were ready and give them to someone to print out?
4  A.  Yes, sir.
5  Q.  Would that person be the same person or would it change?
6  A.  No, sir, it would change.
7  Q.  Why didn't they just let you use their computer?
8  A.  I don't know, sir.  The computers were locked up in an
9  office.
10 Q.  Was there a time, sir, that you gained access to the Health
11 Care Solutions Network shared files to clone or replicate notes
12 for a patient by the name of Mercedes Martinez?
13 A.  I don't remember, sir.
14 Q.  Do you recall telling the FBI that?
15 A.  Sir, I remember that that was done, but I don't remember
16 the name of the patient exactly.  If I see the note, I can
17 remember that it was my signature and that I said that, but
18 without seeing it, no.
19 Q.  Do you recall, aside from the name of the patient, ever
20 doing that, ever gaining access to the shared drive?
21 A.  Generally, one did not have access to the shared file, sir.
22 One would keep one's own information within one's own computer,
23 but you did not have access to the big master file for the
24 patient in the computer.
25 Q.  Just so I understand, all the computers were password

1  protected.
2  A.  Yes, sir, I imagine so.
3  Q.  Do you have firsthand knowledge of that?
4  A.  No, sir.  I would need to give it to someone who had his or
5  her own computer.  I imagine he or she must have used her own
6  password for that.
7  Q.  Let me ask you a question.  You met with the FBI three,
8  four times, correct?
9  A.  More or less, sir.
10 Q.  And I reviewed the reports.  There's no mention of movies,
11 popcorn, pizza, music going on in any of the therapy sessions
12 you were involved with.
13 A.  No, sir.  That was not done there.
14 Q.  When did you leave, sir?  When did you leave Health Care
15 Solutions Network East?
16 A.  When they closed the program, sir.
17 Q.  Were you there when they were shredding documents?
18 A.  No, sir.
19 Q.  So you left before February 2011.
20 A.  Yes, sir.
21         MR. HERMIDA:  I have nothing further, Your Honor.
22                     *  *  *  *  *
23
24
25

```
1   UNITED STATES OF AMERICA                              )
                                                          ) ss:
2   SOUTHERN DISTRICT OF FLORIDA                          )

3

4                        C E R T I F I C A T E

5        I, Carly L. Horenkamp, Certified Shorthand

6   Reporter in and for the United States District Court for the

7   Southern District of Florida, do hereby certify that I was

8   present at and reported in machine shorthand the proceedings

9   had the 10th day of November, 2014, in the above-mentioned

10  court; and that the foregoing transcript is a true, correct,

11  and complete transcript of my stenographic notes.

12       I further certify that this transcript contains

13  pages 1 - 9.

14       IN WITNESS WHEREOF, I have hereunto set my hand at Miami,

15  Florida, this 15th day of November, 2014.

16

17
                         /s/ Carly Horenkamp
18                       _____
                         Carly L. Horenkamp, RMR, CRR
19                       Certified Shorthand Reporter

20

21

22

23

24

25
```