```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF FLORIDA
                       MIAMI DIVISION
                CASE NO. 13-20505-CR-SCOLA

UNITED STATES OF AMERICA,          NOVEMBER 5, 2014
                                   5:02 P.M.
              Plaintiff,


     vs.


ROGER ROUSSEAU, et al.,

              Defendants.         PAGES 1 THROUGH 14
_____

                          DAY 3
             EXCERPT OF CRIMINAL JURY TRIAL
      (CROSS-EXAMINATION OF LISSET PALMERO BY MR. PRIETO)
          BEFORE THE HONORABLE ROBERT N. SCOLA, JR.
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:    Mr. Allan J. Medina, AUSA
                      Mr. A. Brendan Stewart, AUSA
                      Mr. Justin Goodyear, AUSA
                      U.S. DEPARTMENT OF JUSTICE
                      Criminal Division
                      Fraud Section
                      1400 New York Avenue NW
                      Washington, DC  20530


FOR THE DEFENDANT:    Mr. Samuel J. Rabin, Jr., Esq.
(Roger Rousseau)      LAW OFFICES OF SAMUEL J. RABIN, ESQ.
                      800 Brickell Avenue
                      Suite 1400
                      Miami, Florida  33131


FOR THE DEFENDANT:    Mr. Rene Palomino, Jr., Esq.
(Doris Crabtree)      LAW OFFICES OF RENE PALOMINO, JR., ESQ.
                      1221 Brickell Avenue # 900
                      Miami, Florida  33131
```

```
APPEARANCES (continued):


FOR THE DEFENDANT:      Mr. Ricardo P. Hermida, Esq.
(Angela Salafia)        LAW OFFICES OF RICARDO P. HERMIDA, ESQ.
                        55 Merrick Way
                        Suite 212
                        Coral Gables, Florida   33134



FOR THE DEFENDANT:      Mr. Frank A. Prieto, Esq.
(Liliana Marks)         LAW OFFICE OF FRANK A. PRIETO, P.A.
                        One Northeast 2nd Avenue
                        Suite 200
                        Miami, Florida   33132



FOR THE DEFENDANT:      Mr. Juan De Jesus Gonzalez, Esq.
(Alina Fonts)           LAW OFFICES OF JUAN DE JESUS GONZALEZ
                        10631 N. Kendall Drive
                        Suite 150
                        Miami, Florida   33176



FOR THE DEFENDANT:      Mr. Albert Z. Levin, Esq.
(Blanca Ruiz)           LAW OFFICES OF ALBERT Z. LEVIN, P.A.
                        Courthouse Tower
                        40 NW 3rd Street
                        Suite 200
                        Miami, Florida   33128



COURT REPORTER:         Carly L. Horenkamp, RMR, CRR
                        U.S. DISTRICT COURT
                        400 N. Miami Avenue, Room 12-3
                        Miami, Florida   33128
                        (305) 523-5138
```

# I N D E X

*Certificate* ------------------------------------------------ 14


# W I T N E S S

| ON BEHALF OF THE GOVERNMENT: | PAGE |
|---|---|
| LISSET PALMERO | |
| CROSS-EXAMINATION BY MR. PRIETO | 4 |

```
 1         (Before Jury, 5:02 p.m.)
 2            THE COURT:  All right.  Mr. Prieto?
 3            MR. PRIETO:  May it please the Court.  Ladies and
 4    gentlemen of the jury.
 5                      CROSS-EXAMINATION
 6    BY MR. PRIETO:
 7    Q.  Good afternoon, ma'am.
 8    A.  Good afternoon.
 9    Q.  You testified on direct examination that you were there 40
10    hours a week, eight hours a day, right?
11    A.  Correct.
12    Q.  Okay.  And you also testified that the therapists were
13    there until about 1:15 or 1:30?
14    A.  1:00 to 1:30.
15    Q.  1:00 to 1:30, okay.
16        Do you recall that my client, Ms. Marks, did not conduct
17    the fourth group therapy session?  Do you recall that?
18    A.  I don't recall that.
19    Q.  You don't recall that.  Well, if she didn't conduct the
20    fourth group of therapy and only did the three groups, what
21    time would she have left?
22    A.  The last group, it was up to 12:15.
23    Q.  Okay.  So if she didn't do the fourth group, then what you
24    said on direct is not true, correct?
25    A.  What did I --
```

```
 1    Q.  It's simple math.
 2    A.  Okay.  I did not specifically say Liliana Marks.  I just
 3    said that the therapist would be there from 1:00 to 1:30.
 4    Q.  Oh --
 5    A.  I didn't stand outside the door waiting to see, you know,
 6    who was coming in or going.  It was an approximation.
 7    Q.  Okay.  It's just an approximation, right?
 8    A.  Uh-huh.
 9    Q.  Well, I'm going to ask you now:  Ms. Marks, being my
10    client, what time did she leave?
11    A.  I don't know exactly.
12    Q.  You don't know.
13    A.  It may have been about 1:00.  The session would finish at
14    12:15.
15    Q.  So you don't know what time she left, then?
16    A.  I don't know.
17    Q.  Okay.  When the government asked you what time the
18    therapists left, you said they left at --
19    A.  About 1:00 or 1:30.
20    Q.  -- 1:30.
21    A.  1:00 or 1:30.
22    Q.  So is it 1:00 or 1:30?  Is it 12:15?  Or is it you don't
23    know?
24    A.  It's an approximation between 1:00 and 1:30.
25    Q.  Okay.  Thank you.  Ma'am, are you nervous today?
```

1  A.  No, not at all.
2  Q.  Not at all.  You get nervous when the FBI comes to your
3  house but not -- not being in this setting?
4  A.  No.
5  Q.  You're very calm?
6  A.  Because it's been 13 months already I've been in this.
7  Q.  Thirteen months preparing for this day?
8  A.  No, not at all.  Thirteen months in prison.
9  Q.  Okay.  So let's talk about how long you've been preparing
10 for this day.  Now, isn't it true, right, the FBI came to your
11 house, right, and you met with them January 23rd?
12 A.  Correct.
13 Q.  Correct?  Okay.  And didn't mention my client, right?
14 A.  Correct.
15 Q.  Okay.  And the next time that they came you didn't mention
16 my client either, right?
17 A.  I was not asked about your client.
18 Q.  Okay.  You didn't --
19 A.  I was asked other questions.
20 Q.  Ma'am, you didn't -- well, you mentioned some other
21 therapists, didn't you?
22 A.  Because -- if I mentioned them, it's because I was asked
23 about them.
24 Q.  Okay.  So you only told them what they wanted to hear.
25 A.  No, I told them what they asked me.

```
 1   Q.  Well, weren't you supposed to cooperate with them fully,
 2   according to your plea agreement --
 3   A.  Yes.
 4   Q.  -- and tell them everything you know about fraud, right?
 5   A.  Of course, yes.
 6   Q.  Okay.  But you didn't mention my client, right?
 7   A.  They didn't ask me about --
 8   Q.  Okay.
 9   A.  -- your client at that time.
10   Q.  At that time, okay.  So that would have been the second
11   time, May 28, 2013?
12   A.  Whenever I was asked.
13   Q.  Would you take my word for it that that was the second time
14   you met with them, May 28th, 2013?
15   A.  No.
16   Q.  No.
17   A.  I would have to see.
18   Q.  You would have to see it.  Okay.  How about -- I'll show
19   you all the notes you looked at.  Do you want all of them?
20   I'll go through them with you.  Does January 23rd, 2013, sound
21   familiar?
22   A.  Yes.
23   Q.  May 28th, 2013?
24   A.  Correct.
25   Q.  June 12, 2013?
```

```
 1    A.   Yes.
 2    Q.   And then we have 10-20-2014?
 3    A.   Correct.
 4              MR. PRIETO:  Okay.  May I approach, Your Honor?
 5              THE COURT:  Yes.
 6    BY MR. PRIETO:
 7    Q.   Just look up whenever you're ready.
 8              THE COURT:  Well, what is the question?  I'm not going
 9    to sit here and wait for her to read a bunch of things.  So
10    tell me --
11              MR. PRIETO:  Judge, she said she didn't remember when
12    she mentioned my client, and I asked her if it would to refresh
13    her recollection and she said, I'd have to see the notes.
14    A.   I don't understand your question.  These are the same notes
15    that I just reviewed a little while ago.
16    BY MR. PRIETO:
17    Q.   Okay.  Is it fair to say Ms. Marks is not mentioned in any
18    of those notes, correct?
19    A.   Correct.
20    Q.   Thank you.
21              THE COURT:  And which notes were those, from which
22    date?  You know --
23              MR. PRIETO:  Judge, for the record, the witness just
24    reviewed the reports of her interviews, January 23rd, 2013,
25    May 28th, 2013, June 12th, 2013.
```

1                THE COURT: Okay. Thank you.
2    BY MR. PRIETO:
3    Q.  In fact, ma'am, the first time you mentioned my client, as
4    Mr. Rabin brought out, was preparing for this trial, correct?
5    A.  The first time I mentioned your client was when I was asked
6    a question about your client.
7    Q.  Okay. Ma'am, my question is: The first time you mentioned
8    Ms. Marks, my client, is October 20th, 2014, preparing for this
9    case?
10   A.  Was when I was questioned about her, yes.
11   Q.  Okay. Ma'am, my question is: The first time you mentioned
12   Ms. Marks' name, my client, is October 20th, 2014? That's the
13   question.
14   A.  Didn't I answer yes?
15   Q.  Ma'am, I'm going to ask you the question again. The first
16   time -- don't look at the prosecution, ma'am. The first time
17   you mentioned my client is October 20th, 2014, correct?
18   A.  For the fourth time, yes.
19   Q.  Actually that's the first time, ma'am.
20              THE COURT: Don't make comments.
21              MR. PRIETO: I apologize.
22   BY MR. PRIETO:
23   Q.  And in fact, in that interview you didn't say anything
24   about faking group therapy notes, did you, as it relates to my
25   client?

1  A.  If a patient was admitted to the center, attended her
2  therapy group, like Paul Butcko, and sat in the reception area
3  the whole day, and I billed for it, a therapy note needed to be
4  fabricated in order for that bill to be paid.
5  Q.  Ma'am, is that -- was that my question?  My question --
6  A.  You need to elaborate your question.
7  Q.  Well, my question to you is:  You don't mention anything
8  about my client fabricating notes, correct?
9  A.  If Paul Butcko was in question, yes, I did.
10 Q.  Would it refresh your memory if you read the report of
11 2014, of October 20th?
12         MR. PRIETO:  May I approach, Judge?
13         THE COURT:  Yes.
14 BY MR. PRIETO:
15 Q.  Ma'am, is it fair to say that you didn't mention that my
16 client fabricated group therapy notes in that interview?
17 A.  Not in that interview, no.
18 Q.  Okay.  Now, you mentioned some stuff about some -- a
19 patient, actually I think it was urinating in your -- in your
20 plants?
21 A.  In my drawer, my office drawer.
22 Q.  In your drawer.
23 A.  Uh-huh.
24 Q.  Where were the bathrooms located?
25 A.  Right behind my office.

1    Q.   Okay.  And isn't it true, ma'am, that those bathrooms were
2    kept locked?
3    A.   No, sir, not at all times.
4    Q.   Not -- okay.  Not at all times.  Was it kept locked at any
5    time?
6    A.   When a patient was inside the bathroom, yes.
7    Q.   That's the only time it was locked.
8    A.   Yes.
9    Q.   The patients never had to go across the street to use the
10   bathroom because it was locked?
11   A.   No, sir.
12   Q.   Okay.  You testified about some medications.  Are you aware
13   that many medications such as antidepressants, antipsychotics
14   and sedatives cause incontinence, urine incontinence?
15   A.   I was not aware of that, no.
16   Q.   Okay.  What about fecal incontinence, do you know about
17   that?
18   A.   No.
19   Q.   Ma'am, you never saw my client fabricate a group therapy
20   note, correct?
21   A.   I never saw her sitting behind a computer, no.
22   Q.   Ma'am -- well, you said they put computers in what time?
23   A.   In 2010.
24   Q.   And wasn't my client already gone toward the end of 2010
25   when they put the computers in?

Case 1:13-cr-20505-RNS   Document 393   Entered on FLSD Docket 12/26/2014   Page 12 of 14

12

```
 1   A.  I don't know exactly when she was gone.
 2   Q.  So it's possible you didn't see her sitting behind a
 3   computer, then, isn't it?
 4   A.  But notes were fabricated.
 5   Q.  Okay.  You never saw her fabricate a note, correct?
 6   A.  And they never saw me bill for patients that weren't there.
 7   Q.  Right.  Because you kept it a secret, right?
 8   A.  No.  I kept it in my computer in my office.
 9   Q.  Right.  Under password protected, right?
10   A.  My USB drive.
11   Q.  Right, and so everything was kept secret.  In fact, you
12   talked in code, didn't you?
13   A.  No, the ALFs talk in code.  I --
14   Q.  And by the way -- an ALF, what does that stand for, ma'am?
15   A.  Adult living facility.
16   Q.  Would it surprise you that it's an assisted living
17   facility?
18   A.  Does it make a difference?  Adult assisted?
19   Q.  I'll move on.  Ma'am, isn't it true that therapists would
20   give their USBs, turn them in, and then the notes would be
21   printed by Ms. Feas or Gema Pampin, Dana Gonzalez?
22   A.  I don't know.
23   Q.  You don't know.
24   A.  No.
25           MR. PRIETO:  Thank you.
```

1     THE WITNESS:  You're welcome.
2                    *   *   *   *   *

1 UNITED STATES OF AMERICA )
) ss:
2 SOUTHERN DISTRICT OF FLORIDA )

4             C E R T I F I C A T E

5    I, Carly L. Horenkamp, Certified Shorthand

6 Reporter in and for the United States District Court for the

7 Southern District of Florida, do hereby certify that I was

8 present at and reported in machine shorthand the proceedings

9 had the 5th day of November, 2014, in the above-mentioned

10 court; and that the foregoing transcript is a true, correct,

11 and complete transcript of my stenographic notes.

12    I further certify that this transcript contains

13 pages <u>1 - 14</u>.

14    IN WITNESS WHEREOF, I have hereunto set my hand at Miami,

15 Florida, this <u>19th</u> day of <u>November, 2014</u>.

18         /s/ Carly Horenkamp

        Carly L. Horenkamp, RMR, CRR
19         Certified Shorthand Reporter