```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF FLORIDA
                         MIAMI DIVISION
                   CASE NO. 13-20505-CR-SCOLA

UNITED STATES OF AMERICA,              NOVEMBER 12, 2014
                                         10:56 A.M.
                Plaintiff,



     vs.


ROGER ROUSSEAU, et al.,

                Defendants.         PAGES 1 THROUGH 10
_____

                            DAY 7
              EXCERPT OF CRIMINAL JURY TRIAL
      (CROSS-EXAMINATION OF ALEXANDRA HAYNES BY MR. PRIETO)
           BEFORE THE HONORABLE ROBERT N. SCOLA, JR.
                  UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:     Mr. Allan J. Medina, AUSA
                       Mr. A. Brendan Stewart, AUSA
                       Mr. Justin Goodyear, AUSA
                       U.S. DEPARTMENT OF JUSTICE
                       Criminal Division
                       Fraud Section
                       1400 New York Avenue NW
                       Washington, DC 20530


FOR THE DEFENDANT:     Mr. Samuel J. Rabin, Jr., Esq.
(Roger Rousseau)       LAW OFFICES OF SAMUEL J. RABIN, ESQ.
                       800 Brickell Avenue
                       Suite 1400
                       Miami, Florida  33131


FOR THE DEFENDANT:     Mr. Rene Palomino, Jr., Esq.
(Doris Crabtree)       LAW OFFICES OF RENE PALOMINO, JR., ESQ.
                       1221 Brickell Avenue # 900
                       Miami, Florida  33131
```

```
APPEARANCES (continued):


FOR THE DEFENDANT:      Mr. Ricardo P. Hermida, Esq.
(Angela Salafia)        LAW OFFICES OF RICARDO P. HERMIDA, ESQ.
                        55 Merrick Way
                        Suite 212
                        Coral Gables, Florida  33134


FOR THE DEFENDANT:      Mr. Frank A. Prieto, Esq.
(Liliana Marks)         LAW OFFICE OF FRANK A. PRIETO, P.A.
                        One Northeast 2nd Avenue
                        Suite 200
                        Miami, Florida  33132


FOR THE DEFENDANT:      Mr. Juan De Jesus Gonzalez, Esq.
(Alina Fonts)           LAW OFFICES OF JUAN DE JESUS GONZALEZ
                        10631 N Kendall Drive
                        Suite 150
                        Miami, Florida  33176


FOR THE DEFENDANT:      Mr. Albert Z. Levin, Esq.
(Blanca Ruiz)           LAW OFFICES OF ALBERT Z. LEVIN, P.A.
                        Courthouse Tower
                        40 NW 3rd Street
                        Suite 200
                        Miami, Florida  33128


COURT REPORTER:         Carly L. Horenkamp, RMR, CRR
                        U.S. District Court
                        400 N. Miami Avenue, Room 13-4
                        Miami, Florida  33128
                        (305) 523-5138
```

1 **I N D E X**

2 *Certificate* ------------------------------------------------ 10

3

4

5 **W I T N E S S**
ON BEHALF OF THE GOVERNMENT:                                 PAGE
6 ALEXANDRA HAYNES
CROSS-EXAMINATION BY MR. PRIETO                                 4
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1            (Before Jury, 10:56 a.m.)
 2            THE COURT:  Mr. Prieto.
 3            MR. PRIETO:  Thank you, Judge.  May it please the
 4   Court.  Ladies and gentlemen of the jury.
 5                       CROSS-EXAMINATION
 6   BY MR. PRIETO:
 7   Q.  Ms. Haynes, I represent Ms. Marks.  We've never met before,
 8   correct?
 9   A.  No, sir, we have not.
10   Q.  All right.  Ma'am, when Mr. Palomino asked you if
11   Mr. Gonzalez ever offered you any money to fake notes or fake
12   charts or any documents, you indicated that that was not true,
13   correct?
14   A.  That is correct.
15   Q.  Okay.  In fact, ma'am, that is true, isn't it?
16   A.  No, sir, that --
17   Q.  You never told that to the agents.
18   A.  I'm sorry.  I never told the agents that he offered me
19   extra money for any of the fraudulent work I did.
20            MR. PRIETO:  Okay.  May I approach, Judge?
21            THE COURT:  Yes.
22   BY MR. PRIETO:
23   Q.  Ma'am, do you remember as recently as September 30th of
24   this year, 2014, just over a month ago, meeting with the
25   federal agents?
```

1  A.  Yes, sir.
2  Q.  Okay.  If you could just review that document and just let
3  me know when you've reviewed it.
4  A.  (Witness complies.)  Okay, sir.
5  Q.  Ma'am, do you now remember what you told the agents on that
6  day?
7  A.  I remember that conversation.  I never received extra money
8  from Mr. Gonzalez for any work that I did.
9  Q.  Correct.  And the question was, ma'am:  Were you ever
10  offered money by Mr. Gonzalez to fabricate notes and charts and
11  whatnot?
12  A.  He made a reference to extra money.  I never received extra
13  money for fabricating notes.
14  Q.  Okay.  So now he just never referenced it.  But in fact,
15  you indicated to the -- to the agents that he offered you
16  money, correct?
17  A.  I indicated that there was a reference to extra money.
18  That document I don't believe is verbatim.  I'm not sure,
19  though.
20  Q.  But you just reviewed the report, ma'am.  Does that refresh
21  your memory?
22  A.  That's what I'm saying.  It does refresh my memory, but
23  again, there was a talk of extra money, but to me that never
24  came true.  It never happened.
25  Q.  Okay, ma'am.  I believe the question that you were asked

1   was if he ever offered you extra money.  Your answer was no.
2   A.  Right.
3   Q.  Right.  And now after reviewing this report, does that
4   change your answer?
5   A.  No, because he never offered me money.  He may have
6   referenced that maybe there'd be a bonus, maybe there might be,
7   there was a reference, but it was never directly offered to me
8   nor was it ever provided.
9   Q.  Okay.  Ma'am, you indicated that when review for Medicare
10  came down that you had to fix the therapists' notes, correct?
11  A.  They needed to be fixed.  I did not fix them.
12  Q.  Okay.  And you also referenced something to the effect of a
13  quote saying -- some of these notes would say, oh,
14  quote-unquote, I miss my family, correct?
15  A.  That was a general reference, not a direct --
16  Q.  Right.  And do you know if that was one of Dana Gonzalez's
17  favorite things to put in notes, I miss my family?
18  A.  Sir, I don't know what Dana may or may not have put in
19  notes.  Again, missing the family was a general reference,
20  something from the top of my head that could have been in a
21  note.
22  Q.  Okay.  And do you recall indicating that you would approach
23  therapists when there was a missing note and say, hey, there's
24  a note for this date.  I don't know why it's here.  Right?
25  A.  Yes, sir.

1  Q.  Okay.  You didn't go up to them and say, hey, I need you to
2  generate a fake note for this day, did you?
3  A.  No.  I just said that a note was missing and that I
4  needed -- it needed to be done.
5  Q.  Right.  You said, I don't know why it's not here.  Correct?
6  A.  That is correct.
7  Q.  Okay.  And you don't know who ultimately fabricated a note
8  for a missing date, do you?
9  A.  I know that when the notes were requested of the
10 therapists, the therapists brought those notes back.
11 Q.  You --
12 A.  Whether they wrote them or not --
13 Q.  Ma'am, you indicated that you never accepted --
14       THE COURT:  Hold on a second.  Let her finish her
15 answer.
16 A.  Again, we requested the notes directly to the therapists,
17 and they were the ones that turned them in.  What happened
18 between those two points, whether they wrote them, I don't
19 know.  All I know is that we received them, "we" being Dana,
20 Gema, and myself, received them back from the therapists.
21 BY MR. PRIETO:
22 Q.  And ma'am, you indicated that therapists, apparently they
23 knew what they had to put in their notes, right?
24 A.  Yes.
25 Q.  So why would they have to be fixed?

1   A.  Not all notes needed to be fixed.  Some needed to be fixed.
2   Q.  Okay.  And which notes?  You can't identify one note
3   sitting here today.
4   A.  There were thousands of notes written over the years.
5   Q.  And, in fact, there was a data bank available to anybody
6   that had access to computers at HCSN, a data bank full of
7   notes, right?
8   A.  I don't remember a data bank full of notes.  I know that we
9   wrote on computers.  I'm sure the notes were saved to
10  computers.  But as a data bank where you could go and just pull
11  things up, I don't recall that.
12  Q.  Ma'am, you never sat in -- similarly to the other
13  therapists here, you never sat in on one of Ms. Marks'
14  sessions, correct?
15  A.  That is correct.
16  Q.  You don't know what went on in her group therapy room, do
17  you?
18  A.  No, sir.
19  Q.  And ma'am, are you sticking to your story that
20  Mr. Gonzalez, Armando Gonzalez, took Ms. Marks out of a group
21  therapy session to have a conference with her?
22  A.  Again, I can speak for the group that I sat in with
23  Ms. Salafia.  I do know that he would pull the therapists out.
24  Whether collectively or individually I don't know, but I do
25  know that they were pulled out of groups at times.

1            MR. PRIETO:  Ma'am, I have nothing further.  Thank
2   you.
3            THE WITNESS:  Thank you.
4                          *   *   *   *   *

1  UNITED STATES OF AMERICA                          )
                                                     ) ss:
2  SOUTHERN DISTRICT OF FLORIDA                      )

3

4                    C E R T I F I C A T E

5     I, Carly L. Horenkamp, Certified Shorthand

6  Reporter in and for the United States District Court for the

7  Southern District of Florida, do hereby certify that I was

8  present at and reported in machine shorthand the proceedings

9  had the 12th day of November, 2014, in the above-mentioned

10 court; and that the foregoing transcript is a true, correct,

11 and complete transcript of my stenographic notes.

12    I further certify that this transcript contains

13 pages 1 - 10.

14    IN WITNESS WHEREOF, I have hereunto set my hand at Miami,

15 Florida, this 19th day of November, 2014.

16

17

                        /s/ Carly Horenkamp
18                      _____
                        Carly L. Horenkamp, RMR, CRR
19                      Certified Shorthand Reporter

20

21

22

23

24

25