IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 13-20505-CR-SCOLA

UNITED STATES OF AMERICA,     NOVEMBER 17, 2014
                              5:20 P.M.
          Plaintiff,

     vs.

ROGER ROUSSEAU, et al.,

          Defendants.     PAGES 1 THROUGH 13
_____

DAY 9
EXCERPT OF CRIMINAL JURY TRIAL
(CROSS-EXAMINATION OF TERENCE REILLY BY MR. PRIETO)
BEFORE THE HONORABLE ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:     Mr. Allan J. Medina, AUSA
                       Mr. A. Brendan Stewart, AUSA
                       Mr. Justin Goodyear, AUSA
                       U.S. DEPARTMENT OF JUSTICE
                       Criminal Division
                       Fraud Section
                       1400 New York Avenue NW
                       Washington, DC  20530


FOR THE DEFENDANT:     Mr. Samuel J. Rabin, Jr., Esq.
(Roger Rousseau)       LAW OFFICES OF SAMUEL J. RABIN, ESQ.
                       800 Brickell Avenue
                       Suite 1400
                       Miami, Florida  33131


FOR THE DEFENDANT:     Mr. Rene Palomino, Jr., Esq.
(Doris Crabtree)       LAW OFFICES OF RENE PALOMINO, JR., ESQ.
                       1221 Brickell Avenue # 900
                       Miami, Florida  33131

```
APPEARANCES (continued):


FOR THE DEFENDANT:      Mr. Ricardo P. Hermida, Esq.
(Angela Salafia)        LAW OFFICES OF RICARDO P. HERMIDA, ESQ.
                        55 Merrick Way
                        Suite 212
                        Coral Gables, Florida  33134



FOR THE DEFENDANT:      Mr. Frank A. Prieto, Esq.
(Liliana Marks)         LAW OFFICE OF FRANK A. PRIETO, P.A.
                        One Northeast 2nd Avenue
                        Suite 200
                        Miami, Florida  33132



FOR THE DEFENDANT:      Mr. Juan De Jesus Gonzalez, Esq.
(Alina Fonts)           LAW OFFICES OF JUAN DE JESUS GONZALEZ
                        10631 N. Kendall Drive
                        Suite 150
                        Miami, Florida  33176



FOR THE DEFENDANT:      Mr. Albert Z. Levin, Esq.
(Blanca Ruiz)           LAW OFFICES OF ALBERT Z. LEVIN, P.A.
                        Courthouse Tower
                        40 NW 3rd Street
                        Suite 200
                        Miami, Florida  33128



COURT REPORTER:         Carly L. Horenkamp, RMR, CRR
                        U.S. DISTRICT COURT
                        400 N. Miami Avenue, Room 12-3
                        Miami, Florida  33128
                        (305) 523-5138
```

# I N D E X

*Certificate* ------------------------------------------------- 13

### W I T N E S S

ON BEHALF OF THE GOVERNMENT:                                    PAGE
TERENCE REILLY
CROSS-EXAMINATION BY MR. PRIETO                                    4

1       (Before Jury, 5:20 p.m.)
2           THE COURT:  All right.  Mr. Prieto?
3           MR. PRIETO:  May it please the Court.  Ladies and
4  gentlemen of the jury.
5                      CROSS-EXAMINATION
6  BY MR. PRIETO:
7  Q.  Good evening, Agent.
8  A.  Good evening.
9  Q.  Just a couple of things.  You said you worked at
10 Deloitte & Touche -- Touche?
11 A.  Touche.
12 Q.  Touche.  And that was your first job out of college?
13 A.  Yes, it was.
14 Q.  And you had an accounting degree?
15 A.  Yes, I did.
16 Q.  How much did you make at Deloitte & Touche?  That's a
17 pretty fancy place, isn't it?
18 A.  Yes, it is.
19 Q.  I would venture to say -- and correct me if I'm wrong --
20 you made a lot more money there than you made working for the
21 feds, right?
22 A.  I took about a $45,000 pay cut to become an agent.
23 Q.  Gotcha.  Okay.  So you made pretty good money doing the
24 accounting thing, right?
25 A.  Yes, sir.

1  Q.  Okay.  Now you make less?
2  A.  Yes.
3  Q.  You indicated -- well, let's get this out of the way.
4  Agent Cox in the back of the room, he's worked for the agency
5  for six years, you worked for four and a half.
6  A.  Correct.
7  Q.  Fair to say that he's kind of a more senior agent than you?
8  A.  Yes.
9  Q.  Okay.  Fair to say you're not going to stand there on the
10 stand and contradict what he said, right?
11 A.  No.
12 Q.  No, okay.  And you -- you indicated that you were present
13 for my client's interview, right?
14 A.  Yes, sir.
15 Q.  And there was something that you left out of your 302,
16 correct?
17 A.  Yes.
18 Q.  And then you found it, right?
19 A.  I didn't find -- what do you mean I found it?
20 Q.  Well, you found it, right, when my client said, you know,
21 she didn't duplicate notes.  That wasn't in your 302.
22 A.  At first -- at first she said she didn't write notes for
23 absent patients; and then after we presented her with the
24 patient files, she admitted that she did.
25 Q.  Right.  And, well, what I'm saying is, and my question to

```
 1    you was -- because you're a smart guy, right?  I mean, you went
 2    to -- you got a job right out of college at Deloitte & Touche.
 3    You're smart.
 4    A.  I don't know.
 5    Q.  Don't be modest.  Remember -- remember Dr. Triplett, right?
 6    You were here for that, right?
 7    A.  I'm not on the same level as Dr. Triplett.
 8    Q.  Okay.  You're a smart guy, though, right?
 9    A.  I'm not going to answer.
10    Q.  Okay.  Well, you've got -- I mean, Deloitte & Touche is one
11    of the most prestigious accounting firms in the country, isn't
12    it?
13    A.  Yes, it is.
14    Q.  Okay.  So not -- they don't hire dummies, right?
15    A.  I hope not.
16    Q.  Okay.  So my question to you was:  You left something out
17    of your 302, right?  Correct?
18    A.  Correct.
19    Q.  Okay.  Now, with respect to my client's bank records, you
20    looked at -- you looked at banking records of American
21    Therapeutic to put one of your charts together, right?
22    A.  Yes, sir.
23    Q.  Okay.  And let me ask you a question --
24            MR. PRIETO:  May I approach, Judge?
25            THE COURT:  Yes.
```

```
 1   BY MR. PRIETO:
 2   Q.  Now, I just want you to look at these.  You don't have to
 3   look at every page, but if you want to, you can, okay?  Tell me
 4   if those are the records --
 5            THE COURT:  Why are you asking questions when you're
 6   not at a microphone?
 7            MR. PRIETO:  I apologize, Judge.  I forgot about the
 8   islands.
 9   BY MR. PRIETO:
10   Q.  Now, are those the records you reviewed?  Are those banking
11   records from American Therapeutic Corporation?
12   A.  They appear to be the checks.  It's not a great photocopy
13   job, but yes, they appear to be the checks.
14   Q.  Okay.  And those are the ones that you reviewed in
15   preparation of your charts?
16   A.  Yes, sir.
17   Q.  Okay.  And your chart --
18            MR. PRIETO:  If may approach?  Well, I'll find another
19   island real quick.
20   BY MR. PRIETO:
21   Q.  The checks there, in your chart of how much my client made
22   from American Therapeutic, there's no breakdown as to what she
23   made working for them as far as her contributing to the
24   substance abuse program over there, did she?
25   A.  No.  It's my understanding she also worked in the substance
```

1  abuse program there.
2  BY MR. PRIETO:
3  Q.  Okay.  So the numbers that's reflected in ATC, it's a
4  grouping of everything she was paid for substance abuse
5  counseling, substance abuse intake, and the PHP services,
6  correct?
7  A.  Correct.
8  Q.  Okay.
9  A.  It's her total compensation from the company.
10         MR. PRIETO:  May I approach again, Judge?
11         THE COURT:  Yes.
12 BY MR. PRIETO:
13 Q.  Now, Agent Reilly, those are -- is that what appears to be
14 the checks directed towards my client from Health Care
15 Solutions Network?
16 A.  I don't know if they're the checks.  They look like pay
17 stubs that might have been attached to the checks.
18 Q.  Okay.  Did you review the pay stubs or just the checks?
19 A.  We just reviewed the checks.  We didn't have access to
20 these.
21        MR. PRIETO:  May I approach?
22        THE COURT:  Yes.
23 BY MR. PRIETO:
24 Q.  Now, those -- are those the checks from Health Care
25 Solutions Network that you reviewed as it relates to Ms. Marks?

1   A.   Yes, sir.
2   Q.   Is there any -- is there anything different between what
3   the checks reflect and what the pay stubs reflect?
4   A.   I couldn't say.  I didn't review all the pay stubs right
5   there.  But as far as my knowledge, I could speak to the checks
6   that were written to her.  That's what I reviewed.
7   Q.   Okay.  Now, I believe Mr. Palomino indicated in his
8   cross-examination that the amounts on the paychecks received by
9   his client in fact relate or are an even number of therapy
10  sessions at a certain rate, correct?
11  A.   Correct.
12  Q.   Meaning that, you know, let's -- if we just talk round
13  numbers here, if you got paid $10 for 10 sessions, all right,
14  then your paycheck would be a hundred bucks, right?
15  A.   That's correct.
16  Q.   Right?  I mean, I went to law school.  I didn't go to get
17  an accounting degree, but ten times ten is about my limit of
18  understanding.  So that's a hundred dollars, right?
19  A.   That's right.
20  Q.   Okay.  So now I'm going to hand you these again.
21             MR. PRIETO:  If I can approach?
22             THE COURT:  Yes.
23  BY MR. PRIETO:
24  Q.   And take your time if you want to, okay?  Is there any
25  check that you can point to in that whole stack, 2006, 2007,

1  2008, '9, '10, is there any check there that wouldn't be
2  divisible by a number of sessions at a certain rate?
3            THE COURT:  How many checks are there?
4            MR. PRIETO:  There's --
5            THE COURT:  Those are all the checks, like a
6  three-inch thick packet?
7            MR. PRIETO:  Well, that's the entire checklist.
8            THE COURT:  Is that what you gave him, they're all
9  checks?
10           MR. PRIETO:  Well, he looked at them all, Judge, so --
11           THE COURT:  All right.  Let's take our evening recess.
12  See everybody back here at 9:00 tomorrow morning.  I don't have
13  any other matters, so we should be able to start right on time
14  at 9 o'clock.  That way you can have all night to look at the
15  checks.
16       (Jury not present.)
17           THE COURT:  All right.  We're here in open court
18  outside the presence of the jurors, but everybody else is still
19  here.  All right.  So Agent Reilly, if you could look at those
20  documents tonight to save us time in front of the jury
21  tomorrow.
22           So where are we in terms of our pace?  How much more
23  do you have of your cross-examination, Mr. Prieto?
24           MR. PRIETO:  Judge, I've probably got about 10, 15
25  minutes.

```
 1                THE COURT:  Mr. Gonzalez?
 2                MR. GONZALEZ:  Ten, fifteen minutes, Judge, at most.
 3                THE COURT:  Mr. Levin?
 4                MR. LEVIN:  Same with me.
 5                THE COURT:  And then you have the -- is the next
 6   witness your last witness?
 7                MR. MEDINA:  That is, Your Honor.
 8                THE COURT:  And how long do you think your direct is
 9   for her?
10                MR. MEDINA:  About 30 minutes.
11                THE COURT:  And how long cumulatively on the crosses?
12                MR. RABIN:  My cross is five minutes.
13                MR. PALOMINO:  Judge, five minutes if -- I don't know
14   if she's going to touch on my client or not.
15                THE COURT:  Wasn't it zero before?  It went from zero
16   to five minutes?  Or that was somebody else.
17                MR. PALOMINO:  No, that wasn't me.  If what I read in
18   the notes I anticipate, I don't anticipate any cross, but you
19   never know with these witnesses.
20                MR. HERMIDA:  Barring a surprise, I have nothing,
21   Judge.
22                MR. PRIETO:  She, I believe, touches on my client
23   briefly, but about five minutes or less.
24                MR. GONZALEZ:  It depends on what she says, obviously,
25   Judge, but I don't anticipate going a long time with her
```

```
 1  either.  At most, 10, 15 minutes under the worst of
 2  circumstances.
 3          THE COURT:  Okay.
 4          MR. LEVIN:  Twenty to thirty minutes perhaps.  Depends
 5  obviously on what she says.
 6          THE COURT:  Okay.  So we may get to your witness in
 7  custody tomorrow morning, so make sure she's here.
 8          MR. RABIN:  And she'll take I would guess between
 9  direct and cross most of the day.
10          THE COURT:  Okay.  All right.  We'll see everybody in
11  the morning.  Have a good night.
12       (Proceedings adjourned at 5:31 p.m.)
13                       *  *  *  *  *
```

```
1   UNITED STATES OF AMERICA                    )
                                                ) ss:
2   SOUTHERN DISTRICT OF FLORIDA                )

3

4                    C E R T I F I C A T E

5        I, Carly L. Horenkamp, Certified Shorthand

6   Reporter in and for the United States District Court for the

7   Southern District of Florida, do hereby certify that I was

8   present at and reported in machine shorthand the proceedings

9   had the 17th day of November, 2014, in the above-mentioned

10  court; and that the foregoing transcript is a true, correct,

11  and complete transcript of my stenographic notes.

12       I further certify that this transcript contains

13  pages 1 - 13.

14       IN WITNESS WHEREOF, I have hereunto set my hand at Miami,

15  Florida, this 19th day of November, 2014.
```

/s/ Carly Horenkamp

Carly L. Horenkamp, RMR, CRR
Certified Shorthand Reporter