```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF FLORIDA
                     MIAMI DIVISION
               CASE NO. 13-20505-CR-SCOLA

UNITED STATES OF AMERICA,              NOVEMBER 18, 2014
                                       2:28 P.M.
               Plaintiff,



     vs.


ROGER ROUSSEAU, et al.,

               Defendants.         PAGES 1 THROUGH 11
```
---

```
                         DAY 10
              EXCERPT OF CRIMINAL JURY TRIAL
             (TESTIMONY OF SAMUEL J. RABIN, JR.)
          BEFORE THE HONORABLE ROBERT N. SCOLA, JR.
                UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:     Mr. Allan J. Medina, AUSA
                       Mr. A. Brendan Stewart, AUSA
                       Mr. Justin Goodyear, AUSA
                       U.S. DEPARTMENT OF JUSTICE
                       Criminal Division
                       Fraud Section
                       1400 New York Avenue NW
                       Washington, DC  20530



FOR THE DEFENDANT:     Mr. Samuel J. Rabin, Jr., Esq.
(Roger Rousseau)       LAW OFFICES OF SAMUEL J. RABIN, ESQ.
                       800 Brickell Avenue
                       Suite 1400
                       Miami, Florida  33131



FOR THE DEFENDANT:     Mr. Rene Palomino, Jr., Esq.
(Doris Crabtree)       LAW OFFICES OF RENE PALOMINO, JR., ESQ.
                       1221 Brickell Avenue # 900
                       Miami, Florida  33131
```

```
APPEARANCES (continued):


FOR THE DEFENDANT:      Mr. Ricardo P. Hermida, Esq.
(Angela Salafia)        LAW OFFICES OF RICARDO P. HERMIDA, ESQ.
                        55 Merrick Way
                        Suite 212
                        Coral Gables, Florida   33134


FOR THE DEFENDANT:      Mr. Frank A. Prieto, Esq.
(Liliana Marks)         LAW OFFICE OF FRANK A. PRIETO, P.A.
                        One Northeast 2nd Avenue
                        Suite 200
                        Miami, Florida   33132


FOR THE DEFENDANT:      Mr. Juan De Jesus Gonzalez, Esq.
(Alina Fonts)           LAW OFFICES OF JUAN DE JESUS GONZALEZ
                        10631 N Kendall Drive
                        Suite 150
                        Miami, Florida   33176


FOR THE DEFENDANT:      Mr. Albert Z. Levin, Esq.
(Blanca Ruiz)           LAW OFFICES OF ALBERT Z. LEVIN, P.A.
                        Courthouse Tower
                        40 NW 3rd Street
                        Suite 200
                        Miami, Florida   33128


FOR THE WITNESS:        Mr. Benson Weintraub, Esq.
(Alina Faes)            LAW OFFICES OF BENSON WEINTRAUB, ESQ.
                        10245 Collins Ave.
                        Suite 2G
                        Bal Harbour, Florida   33154


COURT REPORTER:         Carly L. Horenkamp, RMR, CRR
                        U.S. DISTRICT COURT
                        400 N. Miami Avenue, Room 12-3
                        Miami, Florida   33128
                        (305) 523-5147
```

```
 1                        I N D E X

 2       Certificate -------------------------------------- 11

 3

 4
                              W I T N E S S
 5       ON BEHALF OF THE GOVERNMENT:                          PAGE
         SAMUEL J. RABIN, JR.
 6       DIRECT EXAMINATION BY MR. GOODYEAR                       4
         CROSS-EXAMINATION BY MS. LOPEZ                           8
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (No Jury, 2:28 p.m.)
2           THE COURT:  All right.  So, Mr. Rabin.
3           MR. RABIN:  Okay.
4           THE COURT:  Come on.
5           MR. RABIN:  I would ask Mr. Medina to step out as
6   well, then, since I guess the rule is invoked.
7           THE COURT:  Well, I thought his testimony was dealing
8   with his conversations with Ms. Feas, not his conversations
9   with Mr. Medina.
10          MR. GOODYEAR:  Correct.
11          THE COURT:  So that's not going to affect Mr. Medina's
12  testimony because he wouldn't have been present.
13          MR. RABIN:  My conversation with Ms. Feas relates to
14  what she told me about her conversations with Mr. Medina.
15          THE COURT:  Okay.
16         SAMUEL J. RABIN, JR., GOVERNMENT WITNESS, SWORN
17                       DIRECT EXAMINATION
18  BY MR. GOODYEAR:
19  Q.   Good afternoon, Mr. Rabin.
20  A.   Good afternoon.
21  Q.   Did you participate in an interview with Alina Faes at the
22  FDC on Saturday of last weekend?
23  A.   I did.
24  Q.   Were you leading that interview?
25  A.   I would say I was leading the interview, yes.

```
 1   Q.  Who else was there?
 2   A.  My associate, Andrea Lopez, Ms. Feas's attorneys, Benson
 3   Weintraub, and Jerry Feas, her son.
 4   Q.  And about how long did the meeting last?
 5   A.  I got there -- I got there late because I left my wallet in
 6   my office, so we were supposed to be there at I want to say
 7   10:00, and I got there around 10:30, 10 -- 10:30 -- 10:15,
 8   10:30.
 9   Q.  Okay.
10   A.  And we were there until about -- no, maybe it was later.
11   You know, honestly, the time, I don't recall.  But I think I
12   was there for a total of about two hours, though.  I don't
13   remember what time it started.  And I did get there a little
14   late.
15   Q.  You got there a little late.  So had the meeting commenced
16   without you before you arrived?
17   A.  I'm sure there was some discussion.  Obviously, I don't
18   know the details of it because it kind of like started over
19   when I got there.
20   Q.  Okay.  And did you discuss with Ms. Feas during this
21   meeting anything about the possibility that her testifying on
22   behalf of Dr. Rousseau might result in a perjury charge against
23   her?
24   A.  No, I did not -- I did not -- the answer is perjury came
25   up, but not the way you're stating it.
```

1        Here's how it came up.  Ms. Feas had -- Dr. Feas had told
2   me that she had met with Mr. Medina on three prior occasions
3   during debriefing sessions, and that at least in each one of
4   those, Mr. Medina was telling her he didn't believe her.  And
5   on the third one, the interview was terminated because he
6   essentially just accused her of being a liar.
7        And then she filed a Rule 2255 motion to withdraw her plea
8   with her new counsel, and again Mr. Medina had called her
9   lawyer.  And again, Mr. Medina had called her lawyer after the
10  2255 had been filed and said that everything in there is a lie
11  and essentially castigated her lawyer for filing the 2255.
12       And when I heard that litany of facts, I told her, well,
13  you could expect that the same thing could happen again, that,
14  you know, the government's going to go after you.  When I
15  thought it would come out would be cross-examination.  The
16  government is going to go after you for, you know, saying that
17  you're lying because you're now testifying.
18  Q.  Did you -- did you tell her that the government would
19  threaten her with perjury during that meeting?
20  A.  Again, what I told her is what I just told you.  That based
21  on this litany, this -- this serious, serial allegations by
22  Mr. Medina, I expected that there would be allegations against
23  her when she was testifying that you're committing perjury and
24  that, you know, that -- well, I don't know what else could come
25  from that, but certainly I told her that that accusation could

1  be made.
2  Q.  Mr. Rabin, during that meeting, did you tell her that the
3  government would threaten her with perjury?
4  A.  The answer -- my best answer is what I just told you.
5  That's the best way --
6  Q.  Was that a yes or a no, what you just told me?
7  A.  I told her the allegation of perjury would probably be made
8  against her, correct.
9  Q.  Did you use the word "threaten"?
10 A.  That I don't remember.  I don't remember if I used the word
11 "threaten."  I know it's in my email, but I don't know if I
12 used it with her.
13 Q.  Well, that was my next question.  So do you remember
14 stating in an email message to Benson Weintraub last night that
15 "At that meeting, I told her that the government would be angry
16 at her and possibly threaten her with perjury"?
17 A.  Absolutely, that was my email.
18 Q.  Okay.  But do you remember -- but now you're saying you
19 don't remember whether or not you used the word "threaten" in
20 the meeting with Ms. Feas.
21 A.  My best recollection is I told her that the government
22 would accuse her of perjury or threaten her with perjury or
23 make an allegation of perjury.  I don't remember the exact
24 word.  But I told her that she was going to, you know, incur
25 the government's wrath, so to speak, and to be prepared for

1  that.
2      MR. GOODYEAR:  Okay.  Nothing further, Your Honor.
3      THE COURT:  All right.  Ms. Lopez, any questions?
4      MR. RABIN:  Really?  I didn't expect this.  Can I
5  object to her questioning me?  (Laughs).
6      MS. LOPEZ:  No.  Just a few questions.
7                      CROSS-EXAMINATION
8  BY MS. LOPEZ:
9  Q.  Mr. Rabin, was that email verbatim of what you said on
10 Saturday?
11 A.  No.
12 Q.  Was it exactly what you said on Saturday?
13 A.  No, it couldn't have been.  It was just -- yesterday --
14 what happened was --
15     THE COURT:  Would it have been better to have a
16 tape-recording so we would know exactly what was said?
17    (Laughter.)
18     THE WITNESS:  Absolutely, Judge.  100 percent, I agree
19 with that.
20 A.  The answer is that events moved very quickly yesterday from
21 the time we left court to the time Mr. Medina made the first
22 phone call to Mr. Weintraub, then Mr. Weintraub contacted me,
23 and there were emails going -- flying back and forth
24 essentially in two separate chains.  I had an email chain going
25 with Mr. Medina, I had an email chain going with Mr. Weintraub,

1   and, you know, I was doing my best to paraphrase events as they
2   were going on.  I wasn't attempting to be precise or, you know,
3   recall exact wording but, you know, just the gist of things.
4   BY MS. LOPEZ:
5   Q.  And had Ms. Feas been threatened before --
6   A.  Yes.
7   Q.  -- by the government?
8   A.  Yes.  Ms. Feas had been threatened -- as I indicated
9   earlier, Ms. Feas had been threatened or accused of committing
10  perjury in at least one of three debriefings by Mr. Medina and
11  when she filed her 2255.  So at least -- at least on two prior
12  occasions that I was made aware of, and possibly more.
13  Q.  And just as a hypothetical, if I warn you that someone is
14  going to threaten you, does that make my -- does that make an
15  actual threat any less threatening?
16  A.  No.  Obviously, me telling her that she could get
17  threatened by the government is -- does not carry the fear
18  factor, if you will, of the government actually making the
19  threat.
20  Q.  So a warning isn't the same thing as the government calling
21  you and actually threatening you, correct?
22  A.  I don't believe it would be.
23           MS. LOPEZ:  Okay.  Thank you.
24           THE COURT:  Any of the defendants have any questions
25  of Mr. Rabin?

```
1           MR. PALOMINO:  No, Your Honor.
2           MR. HERMIDA:  No, Your Honor.
3           MR. PRIETO:  No, Your Honor.
4           MR. RABIN:  Sit down.
5      (Laughter.)
6           MR. GONZALEZ:  No, Judge, I don't have any questions.
7           MR. LEVIN:  No, Your Honor.
8           THE COURT:  All right.  Thank you, Mr. Rabin.
9                        *   *   *   *   *
```

1  UNITED STATES OF AMERICA                                    )
                                                              ) ss:
2  SOUTHERN DISTRICT OF FLORIDA                                )

3

4                    C E R T I F I C A T E

5      I, Carly L. Horenkamp, Certified Shorthand

6  Reporter in and for the United States District Court for the

7  Southern District of Florida, do hereby certify that I was

8  present at and reported in machine shorthand the proceedings

9  had the 18th day of November, 2014, in the above-mentioned

10 court; and that the foregoing transcript is a true, correct,

11 and complete transcript of my stenographic notes.

12     I further certify that this transcript contains

13 pages 1 - 11.

14     IN WITNESS WHEREOF, I have hereunto set my hand at Miami,

15 Florida, this 26th day of December, 2014.

16

17

                       /s/ Carly Horenkamp
18                     _____
                       Carly L. Horenkamp, RMR, CRR
19                     Certified Shorthand Reporter

20

21

22

23

24

25